IN THE UNITED STATES DISTRICT COURT

RECEIVED

JUN 09 2026

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

TERRELL DISMUKES,

Plaintiff,

v. Case No. _____

1:26-cv-06807
Judge Martha M. Pacold
Magistrate Judge Beth W. Jantz
RANDOM/ CAT.2

ACTION K-9 SECURITY, INC.;

UNKNOWN SECURITY OFFICER; and

OTHER UNKNOWN EMPLOYEES OR AGENTS,

Defendants.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

42 U.S.C. § 1983

Plaintiff TERRELL DISMUKES, proceeding pro se, alleges as follows:

I. INTRODUCTION

1. This civil-rights action arises from events occurring on or about December 14, 2024, on property owned, operated, controlled, or associated with the Chicago Transit Authority

"CTA."

Plaintiff alleges that he was the victim of a robbery, assault, and stabbing during the incident.

Plaintiff further alleges that he sustained physical injuries requiring emergency medical treatment following the incident.

Plaintiff alleges that a security officer associated with Action K-9 Security became involved in the incident while performing security duties on CTA property.

Plaintiff further alleges that the involved security officer exercised authority over the scene and became involved in a dispute concerning money and property belonging to Plaintiff.

Plaintiff alleges that the security officer became involved in the disposition of disputed funds despite not personally witnessing the robbery, assault, stabbing, or

events giving rise to the competing claims concerning ownership of the money.

Plaintiff further alleges that actions taken concerning Plaintiff's money and property resulted in financial loss and other economic damages.

Plaintiff alleges that following the incident he experienced transportation hardship, employment-related difficulties, financial instability, and housing-related hardship.

Plaintiff further alleges that Defendants' conduct caused physical, economic, and emotional harm.

Plaintiff seeks compensatory damages, punitive damages where permitted by law, costs, and such other relief as the Court deems just and proper.

## II. JURISDICTION AND VENUE

This Court has subject-matter jurisdiction

pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under the Constitution and laws of the United States. This Court further has jurisdiction pursuant to 28 U.S.C. § 1343 because Plaintiff seeks redress for the alleged deprivation of rights secured by the Constitution and laws of the United States.

Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred within this District.

The acts, omissions, injuries, damages, and events described in this Complaint occurred in whole or in substantial part within the Northern District of Illinois, Eastern Division.

Defendants conducted business, performed

services, or otherwise engaged in activities within this District during the period relevant to the allegations contained herein.

## III. PARTIES

Plaintiff TERRELL DISMUKES is a natural person and resident of the State of Illinois. At all times relevant to this Complaint, Plaintiff was present on CTA property within the Northern District of Illinois.

Defendant ACTION K-9 SECURITY, INC. is, upon information and belief, a private security company that provided security services connected to CTA operations during the period relevant to this action.

Upon information and belief, Action K-9 Security contracted with, was assigned by, or otherwise provided security personnel for CTA facilities, stations, trains, platforms, or related transit property.

5. Defendant UNKNOWN SECURITY OFFICER was, upon information and belief, employed by, assigned through, supervised by, or acting on behalf of Action K-9 Security during the events alleged herein.

6. Plaintiff alleges that the Unknown Security Officer was acting in a security capacity on CTA property at the time of the incident and was exercising authority associated with that position.

7. Plaintiff is presently unaware of the true name, badge number, employee identification number, or other identifying information of the involved security officer.

8. Plaintiff will seek leave to amend this Complaint to substitute the true identity of the involved security officer when such information becomes available through discovery or further investigation.

9. Plaintiff is informed and believes that

additional employees, supervisors, agents, contractors, or representatives participated in, authorized, ratified, approved, or otherwise contributed to the conduct alleged herein. Plaintiff therefore names OTHER UNKNOWN EMPLOYEES OR AGENTS as Defendants and will seek leave to amend this Complaint when their identities become known.

## IV. FACTUAL ALLEGATIONS

## A. THE DECEMBER 14, 2024 INCIDENT

On or about December 14, 2024, Plaintiff was present on CTA property within the City of Chicago, Illinois.

While on CTA property, Plaintiff became involved in an incident during which he alleges that he was robbed, assaulted, and stabbed by other individuals.

Plaintiff alleges that he was the victim of the incident and that personal property belonging

to him was taken during the robbery and assault.

Plaintiff further alleges that he sustained stab wounds and other physical injuries during the incident.

Following the incident, emergency personnel responded and Plaintiff received emergency medical treatment for his injuries.

Medical records generated following the incident document treatment for stab wounds to Plaintiff's back, right flank, and related injuries associated with the attack.

Plaintiff continued to experience physical pain, emotional distress, and other consequences resulting from the injuries sustained during the incident.

Law-enforcement personnel responded to the scene and generated reports concerning the events described herein.

Plaintiff alleges that records generated

following the incident identify Plaintiff as the owner of property reported stolen during the occurrence.

Plaintiff further alleges that personal identification and other personal property belonging to Plaintiff were among the items reported stolen.

## B. INSURANCE PROCEEDS AND POSSESSION OF FUNDS

Prior to the events described herein, Plaintiff had recently received insurance proceeds arising from a loss involving Plaintiff's 2003 Mercedes-Benz.

The insurance proceeds included approximately $1,934.45 in property-damage compensation and approximately $300.00 in loss-of-use compensation.

The total amount of insurance proceeds received by Plaintiff was approximately

$2,234.45.

Plaintiff lawfully possessed these funds at the time of the incident described herein.

Plaintiff intended to use the insurance proceeds for transportation-related purposes and other personal financial obligations following the loss of his vehicle.

Plaintiff alleges that the funds represented legitimate insurance payments issued in connection with a documented vehicle-loss claim.

At all times relevant to this Complaint, Plaintiff maintained ownership and lawful possession of the insurance proceeds.

Plaintiff further alleges that a dispute arose concerning ownership and possession of the funds after the robbery, assault, and stabbing had already occurred.

Plaintiff alleges that other individuals asserted competing claims concerning the

money despite Plaintiff's lawful possession of the funds.

Plaintiff further alleges that the dispute concerning the funds became the subject of involvement by the security officer described herein.

Plaintiff alleges that the security officer became involved in matters concerning ownership, possession, and disposition of the disputed funds despite lacking firsthand knowledge of the events that gave rise to the competing claims.

Plaintiff further alleges that actions taken concerning the disputed funds resulted in the loss of money belonging to Plaintiff.

Plaintiff alleges that the loss of the insurance proceeds contributed to transportation hardship, financial instability, and other damages described below.

Plaintiff reserves the right to supplement

these allegations as additional records, testimony, and discovery materials become available.

## C. SECURITY OFFICER'S INVOLVEMENT AND CONDUCT

Following the robbery, assault, and stabbing described above, a security officer associated with Action K-9 Security became involved in the incident while performing security duties on CTA property. Plaintiff alleges that the security officer exercised authority over the scene and became involved in a dispute concerning money and property belonging to Plaintiff. Plaintiff further alleges that the security officer did not personally witness the robbery, assault, stabbing, or the events giving rise to the dispute concerning the money at issue. Plaintiff alleges that the security officer

arrived only after the underlying events had already occurred and therefore lacked firsthand knowledge concerning how the incident began, who initiated the confrontation, or who lawfully possessed the disputed funds before the incident.

Plaintiff further alleges that despite lacking firsthand knowledge, the security officer accepted accusations made by other individuals present at the scene.

Plaintiff alleges that the security officer relied upon statements made by others rather than upon personal observations of the robbery, assault, and stabbing.

Plaintiff further alleges that the security officer acted upon those accusations without conducting an adequate investigation into the competing claims concerning the money.

Plaintiff alleges that although Plaintiff was the individual who sustained stab wounds

and reported being the victim of the incident, the security officer treated Plaintiff as the suspected wrongdoer rather than as the victim.

Plaintiff further alleges that the security officer communicated allegations concerning Plaintiff to responding law-enforcement personnel despite lacking personal knowledge of the underlying events.

Plaintiff alleges that the security officer treated accusations made against Plaintiff as established facts despite the absence of firsthand knowledge supporting those accusations.

Plaintiff further alleges that the security officer exercised authority concerning the disputed funds and became involved in determining the disposition of money claimed by Plaintiff.

Plaintiff alleges that actions taken by the

security officer concerning the disputed funds resulted in the loss of money lawfully possessed by Plaintiff.

Plaintiff further alleges that Chicago Police Department records generated following the incident reference involvement by K-9 security personnel and contain statements concerning disputed money associated with the incident.

Plaintiff alleges that the security officer was acting in a security capacity on CTA property at the time of the incident and was not acting merely as a private civilian bystander.

Plaintiff further alleges that the security officer exercised authority associated with his security position while interacting with Plaintiff and other individuals involved in the incident.

Plaintiff alleges that the conduct described herein occurred while the security officer

was performing duties associated with transit-security operations on CTA property.

## D. POLICE RECORDS, PROPERTY RECORDS, AND CTA SECURITY RELATIONSHIP

Following the incident, law-enforcement personnel generated reports, records, and related documentation concerning the robbery, assault, stabbing, and subsequent investigation.

Plaintiff alleges that Chicago Police Department records generated following the incident reference involvement by K-9 security personnel in connection with the events described herein.

Plaintiff further alleges that Chicago Police Department property records generated following the incident identify Plaintiff as the owner of property reported stolen during the occurrence.

4. Plaintiff alleges that the property reported stolen included personal identification, personal effects, and other property belonging to Plaintiff.

5. Plaintiff further alleges that the property records are consistent with Plaintiff's position that he was the victim of the robbery and assault rather than the individual responsible for committing those offenses.

6. Plaintiff alleges that the records generated following the incident contain information relevant to the competing claims concerning ownership and possession of the disputed funds.

7. Plaintiff further alleges that publicly available records reflect that Action K-9 Security provided security services connected to CTA operations during the period relevant to this action.

8. Upon information and belief, Action K-9

Security personnel were assigned to perform security-related functions on CTA property, including stations, trains, platforms, and related transit facilities.

Plaintiff alleges that the involved security officer was acting within the scope of his security duties while present on CTA property during the incident.

Plaintiff further alleges that the officer's conduct occurred while performing functions associated with transit-security operations and the exercise of authority connected to those duties.

Plaintiff presently possesses records supporting portions of the allegations contained in this Complaint, including police records, medical records, insurance records, employment records, housing-related records, and other supporting documentation.

12. Plaintiff further alleges that additional relevant evidence exists but is not presently within Plaintiff's possession or control.

13. Such evidence may include surveillance footage, body-camera recordings, dispatch communications, incident reports, witness statements, security logs, personnel records, training materials, contractual records, and other materials maintained by Defendants or third parties.

14. Plaintiff alleges that discovery may reveal additional facts concerning the actions of the involved security officer, the circumstances surrounding the disputed funds, the relationship between Defendants and CTA operations, and other matters relevant to the claims asserted herein.

15. Plaintiff reserves the right to amend, supplement, or modify these allegations as additional information becomes available

through investigation and discovery.

## E. STATE ACTION, SECURITY AUTHORITY, AND SECURITY PROTOCOLS

Plaintiff alleges that the involved security officer was assigned to perform security functions on CTA property and was acting within the scope of those duties at the time of the incident.

Plaintiff further alleges that the security officer exercised authority over members of the public, exercised control over the scene, communicated with responding law-enforcement personnel, and became involved in determining possession of disputed property.

Plaintiff alleges that private security personnel performing public-security functions may, under appropriate circumstances, be deemed to act under color

of state law for purposes of 42 U.S.C. § 1983. Plaintiff further alleges that courts have recognized that private parties performing functions traditionally associated with public safety, public security, or governmental authority may be subject to liability under § 1983 when exercising powers traditionally reserved to the State.

Plaintiff alleges that the principles recognized in Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982), West v. Atkins, 487 U.S. 42 (1988), Wade v. Byles, 83 F.3d 902 (7th Cir. 1996), and Payton v. Rush-Presbyterian-St. Luke's Medical Center, 184 F.3d 623 (7th Cir. 1999), support Plaintiff's contention that the conduct described herein constituted action under color of state law.

Plaintiff further alleges that accepted security standards require security personnel to preserve the scene, identify relevant

witnesses, report factual observations to law enforcement, and refrain from independently determining disputed ownership claims where the officer lacks firsthand knowledge of the underlying events.

Plaintiff alleges that the involved security officer did not personally observe the robbery, assault, stabbing, or events giving rise to the competing claims regarding ownership of the disputed funds.

Plaintiff further alleges that despite lacking firsthand knowledge, the security officer accepted accusations made by third parties, treated Plaintiff as a suspect rather than as the victim of a robbery and stabbing, and became involved in determining the disposition of disputed property.

Plaintiff alleges that the security officer failed to conduct an adequate investigation into the competing claims concerning the disputed

funds before exercising authority over the property.

Plaintiff further alleges that the security officer's actions were inconsistent with accepted security practices, exceeded the proper role of a security officer lacking firsthand knowledge of the underlying events, and contributed directly to Plaintiff's loss of property and resulting damages. Plaintiff reserves the right to supplement these allegations as additional evidence concerning policies, training requirements, supervisory practices, contractual obligations, and security procedures becomes available through discovery.

## F. DUE PROCESS AND PROPERTY DEPRIVATION

Plaintiff alleges that he possessed a constitutionally protected property interest in approximately $2,234.45 in insurance

proceeds lawfully issued and paid to him before the incident.

Plaintiff alleges that the Fourteenth Amendment protects individuals from being deprived of property by a person acting under color of state law without due process of law.

Plaintiff further alleges that Defendants, acting under color of state law and while exercising authority associated with transit-security functions, deprived Plaintiff of that property interest without due process of law.

Plaintiff alleges that Defendants exercised authority over disputed funds and participated in actions affecting Plaintiff's possession and ownership of the money without a warrant, court order, judicial determination, hearing, notice, or other constitutionally adequate procedure.

Plaintiff alleges that he was provided no meaningful opportunity to challenge the

deprivation of his property before the funds were transferred, withheld, distributed, or otherwise placed beyond his possession and control.

Plaintiff further alleges that the involved security officer lacked firsthand knowledge concerning the robbery, assault, stabbing, and competing ownership claims relating to the disputed funds, yet nevertheless exercised authority affecting disposition of the property.

Plaintiff alleges that Defendants relied upon accusations made by third parties rather than personal observation, investigation, documented ownership records, or other reliable procedures before taking action concerning Plaintiff's property.

Plaintiff further alleges that the security officer's actions were not merely passive reporting but involved the exercise of security

authority over the scene and over disputed property.

Plaintiff alleges that Defendants' conduct deprived Plaintiff of property without procedural safeguards required by the Fourteenth Amendment to the United States Constitution.

Plaintiff alleges that Fuentes v. Shevin, 407 U.S. 67 (1972), recognizes that individuals generally may not be deprived of property without notice and an opportunity to be heard.

Plaintiff alleges that Mathews v. Eldridge, 424 U.S. 319 (1976), recognizes that procedural due process requires consideration of the private interest affected, the risk of erroneous deprivation, the value of additional safeguards, and the government or state-related interest involved.

12. Plaintiff alleges that Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982), recognizes that property interests are protected by the Due Process Clause.

13. Plaintiff further alleges that the risk of erroneous deprivation was high because the security officer lacked firsthand knowledge, failed to adequately investigate the competing claims, and allegedly relied on accusations from third parties despite Plaintiff being the person injured and reporting victimization.

14. Plaintiff alleges that basic safeguards, including preserving the scene, identifying witnesses, documenting competing claims, awaiting law-enforcement determination, and refraining from transferring disputed property, would have reduced the risk of erroneous deprivation.

15. Plaintiff further alleges that Defendants'

failure to provide or follow constitutionally adequate safeguards directly contributed to the deprivation of Plaintiff's property. Plaintiff alleges that the deprivation of his insurance proceeds caused transportation hardship, employment-related losses, housing instability, emotional distress, and other damages described throughout this Complaint.

## G. RESULTING ECONOMIC, EMPLOYMENT, AND HOUSING HARDSHIP

As a direct and proximate result of the events described herein, Plaintiff suffered significant financial loss and economic hardship.

Plaintiff alleges that the disputed funds consisted of approximately $2,234.45 in insurance proceeds that he lawfully possessed prior to the incident.

3. Plaintiff further alleges that the loss of those funds deprived him of resources intended for transportation and other necessary personal expenses.

4. Plaintiff alleges that following the incident he experienced substantial transportation hardship due to the loss of the insurance proceeds.

5. Plaintiff further alleges that transportation difficulties interfered with his ability to maintain consistent employment and meet work-related obligations.

6. Plaintiff alleges that the financial consequences of the incident contributed to interruption of employment, reduced income, and diminished earning capacity.

7. Plaintiff further alleges that he suffered ongoing financial instability following the loss of the disputed funds.

8. Plaintiff alleges that the economic effects of

the incident extended beyond the immediate loss of money and affected multiple aspects of his personal and financial life.

Plaintiff further alleges that he experienced difficulty meeting financial obligations, maintaining stability, and securing necessary resources following the incident.

Plaintiff alleges that the financial hardship resulting from the incident contributed to housing-related difficulties and other economic damages.

Plaintiff further alleges that he experienced housing instability, eviction-related hardship, and additional financial consequences following the events described herein.

Plaintiff alleges that employment records, payroll records, insurance records, housing records, and related documentation support the damages alleged in this Complaint.

Plaintiff further alleges that the economic

damages described herein were reasonably foreseeable consequences of the loss of the disputed funds and the events surrounding the incident.

Plaintiff continues to suffer economic harm, financial hardship, and related damages associated with the conduct described in this Complaint.

Plaintiff reserves the right to supplement his damages calculations as additional records and information become available through discovery and investigation.

## V. CLAIMS FOR RELIEF

## COUNT I

## 42 U.S.C. § 1983 – DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS UNDER COLOR OF STATE LAW

Plaintiff realleges and incorporates by reference all preceding paragraphs of this

Complaint as though fully set forth herein.

Plaintiff alleges that the events giving rise to this action occurred on CTA property while the involved security officer was performing duties associated with transit-security operations.

Plaintiff further alleges that the security officer was acting in a security capacity and exercising authority associated with that position during the events described herein.

Plaintiff alleges that the security officer exercised control and authority over the scene following the robbery, assault, and stabbing.

Plaintiff further alleges that the security officer became involved in a dispute concerning money and property lawfully possessed by Plaintiff.

Plaintiff alleges that the security officer lacked firsthand knowledge concerning the

robbery, assault, stabbing, and the events giving rise to the competing claims regarding ownership of the disputed funds.

Plaintiff further alleges that despite lacking firsthand knowledge of the underlying events, the security officer accepted accusations made by other individuals and acted upon those accusations.

Plaintiff alleges that the security officer treated Plaintiff as the suspected wrongdoer despite Plaintiff's status as the individual who sustained stab wounds and reported being the victim of the incident.

Plaintiff further alleges that the security officer communicated allegations concerning Plaintiff to responding law-enforcement personnel despite lacking personal knowledge of the underlying events.

Plaintiff alleges that the security officer exercised authority concerning disputed

funds belonging to Plaintiff and participated in actions affecting Plaintiff's possession of that property.

Plaintiff further alleges that Plaintiff lawfully possessed approximately $2,234.45 in insurance proceeds at the time of the incident.

Plaintiff alleges that actions taken concerning the disputed funds resulted in Plaintiff being deprived of money and property belonging to him.

Plaintiff further alleges that the conduct described herein occurred while the security officer was performing security-related functions on CTA property.

Plaintiff alleges that Defendants, while performing security functions on CTA property and exercising authority associated with those functions, acted under color of state law.

15. Plaintiff alleges that Defendants deprived Plaintiff of rights secured by the Constitution and laws of the United States, including the right not to be deprived of property without due process of law.

16. Plaintiff further alleges that Defendants exercised control over Plaintiff's property without lawful process and without adequate procedural safeguards.

17. Plaintiff alleges that he was deprived of his property without notice, hearing, warrant, court order, judicial determination, or other constitutionally adequate process.

18. Plaintiff further alleges that Defendants' conduct violated the Fourteenth Amendment to the United States Constitution.

19. Plaintiff alleges that Defendants' conduct resulted in the deprivation of property, economic loss, financial hardship, and related damages.

20. Plaintiff further alleges that Defendants acted intentionally, recklessly, willfully, or with deliberate indifference to Plaintiff's federally protected rights.

21. As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical injury, loss of property, economic damages, emotional distress, and other damages described throughout this Complaint.

22. Plaintiff is entitled to recover compensatory damages, punitive damages where permitted by law, costs, interest, and such additional relief as the Court deems just and proper.

COUNT II

42 U.S.C. § 1983 – UNREASONABLE SEIZURE OR INTERFERENCE WITH PROPERTY

146. Plaintiff realleges and incorporates by

reference all preceding paragraphs of this Complaint as though fully set forth herein.

Plaintiff alleges that he lawfully possessed approximately $2,234.45 in insurance proceeds at the time of the incident.

Plaintiff further alleges that Defendants interfered with Plaintiff's possession and control of those funds while acting under color of state law.

Plaintiff alleges that Defendants' interference with Plaintiff's property was unreasonable because the security officer lacked firsthand knowledge of the underlying events, failed to conduct an adequate investigation, and acted upon accusations made by third parties.

Plaintiff further alleges that Defendants lacked lawful authority to seize, transfer, distribute, withhold, or otherwise interfere with Plaintiff's money without lawful process or reliable determination of ownership.

6. Plaintiff alleges that the interference with his property caused direct financial loss and additional economic consequences.

7. Plaintiff further alleges that the conduct described herein was objectively unreasonable under the circumstances.

8. As a direct and proximate result of Defendants' unreasonable interference with Plaintiff's property, Plaintiff suffered damages including loss of money, economic hardship, transportation hardship, employment-related losses, emotional distress, and other damages.

COUNT III
ACTION K-9 SECURITY, INC. – POLICY, CUSTOM, TRAINING, SUPERVISION, OR RATIFICATION

154. Plaintiff realleges and incorporates by reference all preceding paragraphs of this

Complaint as though fully set forth herein.

Plaintiff alleges that Action K-9 Security, Inc. employed, assigned, supervised, trained, or controlled the involved Unknown Security Officer during the relevant period.

Plaintiff further alleges that the Unknown Security Officer acted within the scope of his assigned security duties or under apparent authority connected to Action K-9 Security.

Plaintiff alleges that Action K-9 Security is liable for its own policies, customs, practices, training failures, supervision failures, or ratification of conduct that caused the deprivation of Plaintiff's rights.

Plaintiff alleges, upon information and belief, that Action K-9 Security failed to adequately train or supervise its personnel regarding the handling of disputed property, preservation of crime scenes, identification of witnesses, reporting of factual observations, and limits

of private security authority.

Plaintiff further alleges that Action K-9 Security failed to ensure that its personnel understood that disputed property should not be transferred, distributed, withheld, or disposed of based on accusations made by third parties where the security officer lacks firsthand knowledge.

Plaintiff alleges that Action K-9 Security failed to maintain adequate policies and procedures to prevent security personnel from exceeding their authority on CTA property.

Plaintiff further alleges that Action K-9 Security knew or should have known that inadequate training and supervision regarding disputed property, public-security authority, and interaction with injured crime victims could result in constitutional violations and foreseeable harm.

9. Plaintiff alleges that Action K-9 Security's policies, customs, practices, training failures, supervision failures, or ratification were a moving force behind the deprivation of Plaintiff's rights and damages.

10. Plaintiff reserves the right to supplement these allegations after discovery reveals additional information concerning Action K-9 Security's contracts, policies, training materials, supervision practices, incident reporting procedures, disciplinary records, and communications concerning the incident.

## VI. DAMAGES

## A. PHYSICAL INJURIES

164. Plaintiff incorporates by reference allP

165.

166.

167. preceding paragraphs as though fully set

forth herein.

Plaintiff alleges that he sustained serious physical injuries during the robbery, assault, and stabbing described in this Complaint.

Plaintiff further alleges that he suffered stab wounds to his back, right flank, and other areas of his body.

Plaintiff required emergency medical treatment as a result of the injuries sustained during the incident.

Plaintiff alleges that he experienced physical pain, suffering, discomfort, and related injuries associated with the attack.

Plaintiff further alleges that the physical injuries caused emotional trauma, inconvenience, and disruption of his daily activities.

## B. PROPERTY LOSSES

Plaintiff alleges that he was deprived of

approximately $2,234.45 in insurance proceeds that he lawfully possessed at the time of the incident.

Plaintiff further alleges that personal property, identification, and other belongings were taken during the robbery and assault. Plaintiff alleges that he suffered the loss of money and personal property as a direct result of the events described herein. Plaintiff further alleges that the loss of such property caused additional financial hardship and inconvenience.

## C. ECONOMIC AND EMPLOYMENT LOSSES

Plaintiff alleges that the loss of the disputed funds substantially affected his financial condition. Plaintiff further alleges that the loss of those funds contributed to transportation difficulties following the incident.

3. Plaintiff alleges that transportation difficulties interfered with his ability to maintain employment and meet work-related obligations.

4. Plaintiff further alleges that he experienced interruption of employment, reduced income, lost earnings, and diminished financial stability.

5. Plaintiff alleges that the financial consequences of the incident extended beyond the immediate loss of money and continued for an extended period thereafter.

6. Plaintiff further alleges that employment records, payroll records, and related documentation support these damages.

## D. HOUSING-RELATED DAMAGES

180. Plaintiff alleges that the financial hardship resulting from the incident contributed to housing instability and related difficulties.

2. Plaintiff further alleges that he experienced housing-related hardship, eviction-related consequences, and other economic losses following the incident.

3. Plaintiff alleges that the loss of financial resources impaired his ability to maintain stable housing and satisfy financial obligations.

4. Plaintiff further alleges that housing records and related documentation support these damages.

## E. EMOTIONAL DISTRESS AND NON-ECONOMIC DAMAGES

184. Plaintiff alleges that he suffered emotional distress, anxiety, humiliation, frustration, mental anguish, and related non-economic damages as a result of the events described herein.

2. Plaintiff further alleges that being treated as

a suspected wrongdoer despite being the victim of a robbery, assault, and stabbing caused additional emotional harm.

Plaintiff alleges that the physical injuries, financial losses, employment disruption, and housing-related difficulties collectively caused substantial emotional suffering.

Plaintiff continues to experience damages associated with the events described in this Complaint.

Plaintiff reserves the right to supplement and amend his damages calculations as additional evidence becomes available through discovery and investigation.

## VII. EXHIBIT INDEX

Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

Plaintiff intends to rely upon documentary

evidence, records, photographs, and other materials supporting the allegations contained in this Complaint.

The exhibits presently known to Plaintiff include, but are not limited to, the following:

Exhibit A – Chicago Police Department Incident Report concerning the robbery, assault, stabbing, security officer involvement, disputed funds, and related events.

Exhibit B – Chicago Police Department Property Records identifying Plaintiff as the owner of property reported stolen during the incident.

Exhibit C – Emergency Medical Records documenting treatment for stab wounds and related injuries sustained by Plaintiff.

Exhibit D – Demand Letter and related correspondence concerning the matters alleged in this Complaint.

Exhibit E – CTA procurement records,

contractual records, public records, and related materials concerning Action K-9 Security's involvement in CTA security operations.

Exhibit F – Employment records, payroll records, attendance records, disability-related records, and other documentation supporting Plaintiff's claims of economic loss.

Exhibit G – Insurance records, vehicle-loss records, transportation-loss records, and documentation relating to insurance proceeds issued in connection with Plaintiff's 2003 Mercedes-Benz.

Exhibit H– Housing-related records, eviction-related documentation, financial records, and materials supporting Plaintiff's claims of housing hardship and economic damages.

Exhibit I  – Additional materials obtained through investigation and discovery, including surveillance footage, witness statements, communications, dispatch records, security

logs, personnel records, training materials, and other relevant evidence.

192. Plaintiff reserves the right to supplement, amend, renumber, replace, or add exhibits as additional evidence becomes available through investigation and discovery.

## VIII. REQUEST FOR RELIEF

WHEREFORE, Plaintiff TERRELL DISMUKES respectfully requests that this Court enter judgment in his favor and against Defendants and grant the following relief:

A. Award compensatory damages in an amount to be determined according to proof;

B. Award damages for physical injuries, pain and suffering, emotional distress, mental anguish, humiliation, inconvenience, and related non-economic harm;

C. Award damages for loss of property, loss of insurance proceeds, economic loss,

employment-related damages, housing-related damages, and other financial harm resulting from the events described herein;

D. Award punitive damages against any Defendant for whom such damages are permitted by law;

E. Award costs of suit and any recoverable litigation expenses permitted by law;

F. Award pre-judgment and post-judgment interest where permitted by law;

G. Grant declaratory, equitable, or injunctive relief to the extent authorized and supported by law;

H. Grant such other and further relief as the Court deems just and proper under the circumstances.

## IX. JURY DEMAND

193. Plaintiff demands trial by jury on all issues so triable as a matter of right.

Respectfully submitted,

TERRELL DISMUKES

Plaintiff Pro Se

7925 West Lowe Street

Chicago, Illinois 60620

Date: _____

Signature: _____

12:06 C 🔲 ♪ •  ⁵ .ıll 66

< **Title**  📖  +  ⋮

     

26/28

# Exhibit A

RD #:  JH543082

**Chicago Police Department - Incident Report**

EVENT#2434912098 BWC INCIDENT. IN SUMMARY R/OS RESPONDED TO A BATTERY IN PROGRESS CALL AT THE PULASKI AND LAKE GREEN LINE. UPON ARRIVAL R/OS OBSERVED AMBO 64 ON SCENE WITH [V] DISMUKES, TERRELL. BT 7385F WHO ALSO ARRIVED ON SCENE RELATED TO R/OS THAT K9 SECURITY INFORMED THEM THAT [V] DISMUKES, TERRELL WAS ENGAGED IN A PHYSICAL ALTERCATION WITH A GROUP OF TEENS ON THE TRAIN. BT 7385F RELATED [V] DISMUKES, TERRELL WAS ON THE TRAIN AND TOOK SOME MONEY FROM THE ███████ RELATED THAT ███████ UNKNOWN 1, UNKNOWN 2, AND [O] UNKNOWN 2 UNKNOWN 2 ). BT 7385F RELATED THE MONEY ( $2000 USC) ███████ AND (ACLIN K9) REQUESTED ███████ R/OS THEN RELOCATED TO ███████ FROM [V] DISMUKES, TERRELL AND GAVE IT TO THE ███████ THAT HE GOT ONTO THE TRAIN AT THE AUSTIN WHERE THEY SPOKE WITH [V] DISMUKES, TERRELL WHO RELATED THAT HE GOT ONTO THE TRAIN AT THE AUSTIN GREEN LINE STOP WITH ███████ [V] DISMUKES, TERRELL RELATED HE ENGAGED IN VERBAL CONVERSATION WITH THESE ███████ WHILE HE WAS TALKING TO THE ███████ DISMUKES, TERRELL RELATED THAT THE ENTERED THE TRAIN-CAR (#5184) AT CENTRAL AVE GREEN LINE STATION. [V] DISMUKES, TERRELL RELATED THAT THE ███████ THEN JOINED THE CONVERSATION. THE CONVERSATION THEN TURNED INTO AN ARGUMENT THAT TURNED PHYSICAL ALTERCATION AS [O] UNKNOWN 3 PUNCHED [V] DISMUKES, TERRELL MULTIPLE TIMES AND THEN THE OTHER ███████ JOINED IN, PUNCHING AND KICKING [V] DISMUKES, TERRELL MULTIPLE TIMES. LEAVING THE ABOVE LISTED INJURIES [V] DISMUKES, TERRELL RELATED HE COULD NOT RECALL WHICH OFFENDER WAS STRIKING HIM, AS IT ALL HAPPENED SO FAST. [V] DISMUKES, TERRELL RELATED HE FELL TO THE FLOOR AND BEGAN FEELING PAIN ON HIS BACK IN THE ABOVE LISTED INJURY AREAS. [V] DISMUKES, TERRELL RELATED THAT HE IS UNABLE TO DETERMINE WHO WAS STABBING HIM DUE TO HIM COVERING HIS FACE TO PREVENT INJURY. [V] DISMUKES, TERRELL RELATED THE ███████ THEN TOOK THE ABOVE LISTEN ITEMS OF HIS PERSON AND EXITED THE TRAIN AT PULASKI GREEN LINE AND FLED IN AN UNKNOWN DIRECTION TO AN UNKNOWN LOCATION. [V] DISMUKES, TERRELL RELATED THAT WHEN HE EXITED THE TRAIN AT PULASKI GREEN LINE K9 STAFF TOOK HIS MONEY AND GAVE IT TO THE ███████ IN GIVEN TO AND EXPLAINED. ABOVE NOTIFICATIONS WERE MADE. THE INCIDENT WAS CAPTURED ON CTA VIDEO FOOTAGE AND IS ABLE TO BE RETRIEVED PER CTA SECURITY.
NOTIFICATION: CRIME PREVENTION INFORMATION CENTER (CPIC), BRANDI SMITH, Beat# 7051G, Star#. 10520, Emp# ███████ Date: 14-DEC-2024, Time: 22:30.
NOTIFICATION: FIELD SERGEANT, TONY RAMIREZ, Beat# 1110, Star# 1751, Emp# ███████ Date: 14-DEC-2024, Time: 21:39.
NOTIFICATION: FIELD SERGEANT, DANIEL JONES, Beat#: 1120, Star#: 1199, Emp# ███████ Date: 14-DEC-2024, Time: 11:20.

| | Star No | Emp No | Name | Date | Unit | Beat |
|---|---|---|---|---|---|---|
| Approving Supervisor | 1199 | ███ | JONES, Daniel, R | 15 Dec 2024 00:24 | 011 | |
| Assisting Officer | 21834 | ███ | GRAYWAL, Bill, S | 14 Dec 2024 22:11 | 660 | 7385F |
| Assisting Officer | 15220 | ███ | FENNELL, Thomas, J | 14 Dec 2024 22:11 | 606 | 7385F |
| Detective / Investigator | 20742 | ███ | VERTA, Raymond, J | 15 Dec 2024 10:23 | 610 | |
| Reporting Officer | 18103 | ███ | HYPPOLITE, Guirlene, | 14 Dec 2024 22:11 | 011 | 1124 |
| Reporting Officer | 16590 | ███ | GARDNER, Joel, L | 14 Dec 2024 22:11 | 011 | 1124 |

27/28

||| ♪  ◯  <



Exhibit B



## AFTER VISIT SUMMARY
Terrell Dismukes

### Instructions
Is follow-up with trauma surgery their office in 7 to 10 days for suture removal, monitor your cuts for redness swelling discharge fevers return to the ER. Use Tylenol ibuprofen for pain.

**Follow up with Jonathan Frederick Bean, MD**
Specialty: Surgical Critical Care, General Surgery
Contact: 2653 W OGDEN AVE
3RD FLOOR
Chicago IL 60608-1647
773-257-6701

### Today's Visit
You were seen by E Jackson, M Porter, and D Cuellar

**Reason for Visit**
Stab Wound

**Diagnoses**
- Stab wound of back without complication, left, initial encounter
- Stab wound of right flank, initial encounter
- Abrasion of skin of scalp

**Lab Tests Completed**
ABO & RH TYPING
CBC with Auto Differential
CMP
HEP C AB IGG SCREEN, ALVERNO HCAB
HIV AG/AB COMBO QUALITATIVE
POCT Creatinine
PT / INR - Prothrombin Time
PTT / APTT
TYPE & SCREEN (CROSSMATCH CONVERTIBLE)

**Imaging Tests**
CT CERVICAL SPINE WO/ CONTRAST
CT CHEST ABDOMEN AND PELVIS W CONTRAST
CT HEAD OR BRAIN WO CONTRAST
Chest X-Ray
Pelvis X-Ray

Terrell Dismukes (MRN: 10340671) • Printed at 12/21/2024 11:

# Exhibit C

2:48

**Tracking Number:**

# 9589071052704081684071

Copy    Add to Informed Delivery

## Latest Update

Your item was delivered to the front desk, reception area, or mail room at 2:05 pm on April 20, 2026 in CHICAGO, IL 60612.

Get More Out of USPS Tracking:

USPS Tracking Plus®

✓ **Delivered**
**Delivered, Front Desk/Reception/Mail Room**
CHICAGO, IL 60612
April 20, 2026, 2:05 pm

See All Tracking History

What Do USPS Tracking Statuses Mean?

**Text & Email Updates**          ⌄

**USPS Tracking Plus®**           ⌄

**Product Information**           ⌄

exhibit D



5:59

ChatGPT

# CLEANER VERSION FOR YOUR COMPLAINT

## EXHIBIT F

### CTA Contract Records Connecting CTA and Action K-9 Security, Inc.

Plaintiff references publicly available Chicago Transit Authority procurement and contract records showing that CTA entered into a contract with Action K-9 Security, Inc. on or about August 18, 2022 for deployment of security guards with canines throughout CTA operations.

Chicago Transit Board Ordinance No. 024-111 publicly states:

> "On August 18, 2022, the Authority entered into a contract with Action K-9 Security Inc."

The ordinance further states that the contract involved:



Reply to ChatGPT

Chevy E



Earnings Statement

THE ODP CORPORATION

Veyer, LLC
6600 N Military Trail
Boca Raton, FL 33496

CO 62W

000001-000001

Employee ID                1070871
                           Page 001 of 001
Period Beg/End:            02/09/2025 - 02/22/202
Check Date:                04/25/2025
Check Number:              0060352519
Batch Number:              SC4YHH4UKEFC
Hire Date 08/27/2024

Terrell Dismukes
837 E 80TH ST
#1
Chicago, IL 60619

Title 100001 - Associate, Warehouse - US
For inquiries please call 1-888-954-4636
Total Hours Worked:        0.00
Basis of Pay:              Hourly
Pay Rate:                  16.00

Location 001105 - Carol Stream,IL - USWH
Dept 62004 - Veyer Service Fulfillment -
Other                          This
Deductions                     Period      Year-to-

| Earnings | Rate | Hours/ Units | This Period | Year-to-Date |
|---|---|---|---|---|
| | | | 0.00 | 710.72 |
| Bonus 1x | | | 0.00 | 0.35 |
| ODP-Shift Di | | | 0.00 | 640.00 |
| PTO Front | | | 0.00 | 320.00 |
| Paid LV - IL | | | 93.76 | 93.76 |
| Paid LV IL D 16.0000 | 5.86 | | 0.00 | 905.28 |
| Reg Hours | | | 0.00 | 320.00 |
| Retro PL-IL | | | 93.76 | 2990.11 |
| Gross Pay | | | | |

| Taxes | This Period | Year-to-Date |
|---|---|---|
| FIT | 20.63 | 215.87 |
| Medicare Employee | 1.36 | 43.36 |
| Social Security Employee | 5.82 | 185.39 |
| ILSIT | 4.64 | 144.65 |
| Total Taxes | 32.45 | 589.27 |

| Deductions | This Period | Year-to-Date |
|---|---|---|
| *ODP-401K Savings | 0.00 | 67.68 |
| ODP Child Support | 24.56 | 148.73 |
| ODP Child Support | 4.91 | 29.74 |
| ODP Child Support Processing Fe | 2.31 | 9.24 |
| Total Deductions | 31.78 | 255.39 |
| Net Pay | 24.53 | 2125.45 |

*Excluded from taxable

Your Federal taxable wages for this period are: $93.76

Exhibit F



Safeway Insurance Company
790 Pasquinelli Drive
Westmont, IL 60559

Send To:

TERRELL DISMUKES
837 E 80TH ST 1
CHICAGO, IL 60619

| Check No | Check Date | Amount | Claim No | Invoice No | Coverage | Rep |
|---|---|---|---|---|---|---|
| 149118 | 11/25/24 | $300.00 | 4032188-IL-PPCL | | PD | Ashley McClure |

| To The Order Of | TERRELL DISMUKES |
|---|---|

FOR LOSS OF USE FROM ACCIDENT ON 11/03/2024 11/03/24
at 837 E 80TH ST CHICAGO, IL

Should you have any questions please call 630-887-8300

# Exhibit G

em Generated Hearing Date: <<CmsHearingStart>>
ation: <<CmsHearingResource="Location">>
ge: <<CmsHearingResource="JudicialOfficer">>

| | FILED |
|---|---|
| | 2/3/2025 3:28 PM |
| | Mariyana T. Spyropoulos |
| | CIRCUIT CLERK |
| | COOK COUNTY, IL |

2120 - Served     2220 - Not Served     2620 - Sec. of State     20251701957
2121 - Alias Served    2221 - Alias Not Served    2621 - Alias Sec. of State   Courtroom, 1302
     31248804      (1/15/21) CCM 0081A

**Eviction Summons**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## MUNICIPAL DEPARTMENT, DISTRICT ONE

SUMMER QWEST HOLDINGS LLC,
       Plaintiff(s),

       -vs-

TERRELL DISMUKES and
UNKNOWN OCCUPANTS,
       Defendant(s).

**8001 S Maryland Avenue, Unit # 1**
**Chicago, Illinois 60619**
       Address of Defendant(s)

) Cause No:   20251701957

) Rent Amt. Claimed: $4,430.00 + accruing rent + costs

) Status Date:
For updated information about your case, including hearings, subsequent filings and other case information, please visit our Online Case Search and search for your case: https://casesearch.cookcountyclerkofcourt.org

) Court Location:    **Daley Center**
                    **50 W Washington St**
                    **Chicago, IL 60602**
) Room or Remote    **Zoom Access by Phone: 312-626-6799**
  Call Information:    **Zoom ID: 922 8830 9469**
                  **Password: 480525**

Please Serve as follows: Special Process Service

Hearing Date: 03/17/2025 @ 11:00 AM
Location: D1-RM 1302
Judge: Cantwell Heggie, Corinne

### EVICTION SUMMONS
### BEFORE YOU GO TO COURT, YOU MUST PAY YOUR APPEARANCE FEE.

The plaintiff (landlord/property owner), named above, has filed a complaint in this Court to have you evicted. A true and correct copy of the Complaint is attached.

**YOU ARE HEREBY SUMMONED** to Court and you must appear for an initial case management at the time and place specified above. **YOU CAN (and should) APPEAR REMOTELY BY VIDEO OR TELEPHONE.** If you need help for going to court remotely or you need information for joining court remotely please go to www.cookcountycourt.org.

You are required to pay an appearance fee on or before the date of trial, not less than 7 days nor more than 40 days after issuance of summons. If you are unable to pay your court fees, you can apply for a fee waiver. For more information, you can visit www.illinoislegalaid.org or ask the Circuit Court Clerk's Office for a fee waiver application.

To file your appearance you need access to the internet. Please visit www.cookcountyclerk.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**E-FILING IS NOW MANDATORY IN CIVIL CASES WITH LIMITED EXEMPTIONS.** To electronically file (e-file) your appearance, you need access to the internet. Kiosks with internet access are available at all Clerk's Office locations. More information about e-filing is on Page 2 of this summons.

Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois
cookcountyclerkofcourt.org

# Exhibit H